## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Deborah K. Smith
Sugar Creek Law
Thorntown, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of D.P. & C.H., Children Alleged To Be Children in Need of Services,

T.P., Mother,

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

March 30, 2015

Court of Appeals Case No. 06A01-1408-JC-339

Appeal from the Boone Circuit Court

The Honorable J. Jeffrey Edens, Judge

The Honorable Sally E. Berish, Magistrate

Cause Nos.: 06C01-1312-JC-380; 06C01-1312-JC-381

**Brown, Judge.**

[1] T.P. ("Mother") appeals from the trial court's order determining that D.P. and C.H. (the "Children") are children in need of services ("CHINS").[1] Mother raises one issue, which we restate as whether sufficient evidence supports the court's determination that the Children are CHINS. We affirm.

### Facts and Procedural History

[2] Mother is the mother of D.P., born in August 2000, and C.H., born in November 2007. J.H. ("Father J.H.") is the biological father of D.P.[2] On December 28, 2013, the Boone County Sheriff's Department received a report of a domestic disturbance at the home of Mother, Father J.H., and the Children, and Deputy Jeremy McClaine responded to the report. Father J.H. answered the door, acknowledged the domestic disturbance, and informed Deputy McClaine he had walked into one of the Children's rooms where Mother was using heroin and had tried to grab it from her and when doing so got her hand. An unused needle was found at the foot of the bed and a second unused needle was found in Mother's coat in another bedroom. Deputy McClaine observed that the speech of Mother and Father J.H. was slurred, that their balance was impaired, and that Father continued to drink while police were at the home. Mother went to the hospital and Father J.H. was arrested for domestic battery. Law enforcement placed the Children next door at the home of Father J.H.'s parents. On December 29, 2013, DCS family case

---

[1] D.P.'s father and C.H.'s father do not participate in this appeal.

[2] A no contact order is in place between Mother and C.H.'s father, and C.H. has no real contact with his father.

manager Chelsea Mikesell ("FCM Mikesell") initiated an investigation and visited the home and spoke with Mother.

[3] On January 2, 2014, the Indiana Department of Child Services ("DCS") filed requests to file petitions ("CHINS Petitions") alleging that each of the Children were CHINS, to which the CHINS Petitions were attached. That same day, the court granted DCS's motions, and the CHINS Petitions were filed. DCS alleged in the CHINS Petitions that it received a report on December 28, 2013, that the Children were the victims of neglect, that the report stated that Father J.H. grabbed and squeezed Mother's hand, possibly breaking her hand, that Father J.H. stated he did this because Mother was using heroin in front of C.H., that Mother and Father J.H. were intoxicated, and that police found two unused syringes in the home. The CHINS Petitions further alleged that, during her investigation, FCM Mikesell learned that Father J.H. had been arrested and charged with domestic battery as a class C felony, that Mother had been taken to the hospital, and that Mother has a history of drug abuse and has a current addiction to heroin.

[4] On January 22, 2014, a family team meeting was held at which Mother, Father J.H., and ongoing DCS family case manager Terrian Brady ("FCM Brady") were present. On March 17, 2014, the court held a fact-finding hearing on the CHINS Petitions at which the court heard testimony from Deputy McClaine, FCM Mikesell, and FCM Brady, and the court took the matter under advisement.

[5] On May 15, 2014, the trial court entered an order adjudicating the Children to be CHINS which included fifty-three findings of fact. The court found that police had

been called to the home of Mother, Father J.H., and the Children in response to a report of domestic violence; that Father J.H. answered the door and acknowledged the domestic disturbance; that Father J.H. informed Deputy McClaine he had walked into the six-year-old child's room where Mother was using heroin, that he had "tried to grab it from her and when doing so got her hand," and that Mother assaulted him; and that the Children were present in the home during the altercation and the six-year-old child was in the same bedroom as the adults. Appellant's Appendix at 50.

[6] The court also found that an unused needle was found at the foot of the bed in the room where the incident between Mother and Father J.H. occurred, that Mother admitted to Deputy McClaine that she brought the needle into the home, and that a second unused needle was found in Mother's coat in another bedroom. The court found that Deputy McClaine observed that Mother's eyes were bloodshot, her speech was slurred, her balance was impaired, and her hand was red and swollen; and he observed that Father J.H.'s speech was slurred, his balance was impaired, and he continued to drink while police were at the home. The court noted that there were beer cans in the six year old child's room and around the house, that law enforcement placed the Children next door at the home of the parents of Father J.H, and that on December 29, 2013, DCS received a report that Mother left the hospital against medical advice.

[7] The court further found that FCM Mikesell initiated an investigation on December 29, 2013, and, at the time of the interview, found the physical condition of the Children's home satisfactory with food in the household. The court found that

Mother admitted she has a heroin addiction and also used marijuana and took painkillers and that she stated that she was unable to afford in-patient treatment as she has no insurance and could not qualify for Medicaid. The court found in Finding 32 that, when FCM Mikesell met the Children, they were appropriately dressed, and that she established that their basic health and medical needs were being met.

[8] Additionally, the court found that Father J.H. admitted to drinking five or six beers at the time of the incident and that he submitted to a drug screen and admitted it might be positive for marijuana as he had smoked with his buddies at work. The court found that the Children were currently placed with the parents of Father J.H. and that Mother and Father J.H. were exercising daily visitation supervised by J.H.'s parents.

[9] In Finding 44, the court found that at the point of the family team meeting on January 22, 2014, Mother had not pursued a referral made to Harbor Lights or any in-patient drug treatment as she had requested of FCM Mikesell. In Finding 45, the court found that Mother again requested assistance from DCS and that DCS made a referral for Mother to Aspire. In Finding 46, the court found that, as of the date of fact finding, Mother was attending Aspire through the DCS referral for substance abuse counseling and individual and group therapy and that DCS was paying for this service. The court further found that Mother was attending New Life Recovery, which was not a DCS referral, that Father J.H. requested no services, and that FCM Brady recommends Father J.H. complete the program Fatherhood Engagement.

[10] The court further found that Mother was charged with unlawful possession of a syringe, a class D felony, on February 11, 2014, and that, at the time of fact finding, Father J.H.'s domestic battery charges remained pending jury trial. The court also found that DCS referred the Children to have assessments at Aspire and that the assessments recommended home-based counseling for the Children to address witnessing domestic violence and the separation from their parents.

[11] In its conclusions, the court determined that DCS proved by a preponderance of the evidence that the Children were CHINS in that their physical or mental condition was seriously impaired or endangered as a result of the inability, refusal or neglect of their parent, guardian or custodian to provide them with necessary supervision, and that they need care, treatment, or rehabilitation that is unlikely to be provided or accepted without the coercive intervention of the court. The court concluded that the Children are CHINS in part because on December 28, 2013, they were in the care of Mother and Father J.H. who were both intoxicated and involved in a domestic violence incident in front of the Children; Mother has an admitted heroin addiction; Father J.H., believing he was witnessing Mother's use of heroin, attempted to stop her with inappropriate violence, and the results were Mother being transported to the emergency room and Father J.H.'s arrest; and that subsequently both Mother and Father J.H. admitted to using illegal drugs. The court also concluded that the coercive intervention of the court is necessary because Mother admitted to a heroin addiction and requested assistance in obtaining in-patient treatment as she could not afford it on her own; DCS provided Mother with a referral for inpatient services but she did not follow through on that

referral or any in-patient treatment; Father J.H. was arrested for domestic battery on Mother in front of the Children and thereafter admitted to marijuana use; DCS was unaware of any services Father J.H. was involved in, or if the issue of domestic violence had been addressed; and that neither Mother nor Father J.H. had provided a plan to arrange for services for the Children to address the domestic violence they witnessed. The court entered judgment that the Children were CHINS.

[12] Following a dispositional hearing, the court entered dispositional orders on July 25, 2014 for the Children which granted wardship to DCS and ordered that the Children continue to be placed with the parents of Father J.H. and receive home-based counseling and visitation with Mother and Father J.H. The dispositional order for D.P. also provided that Father J.H. would participate in a program called Fatherhood Engagement, and the dispositional order for C.H. provided that C.H.'s father was to establish paternity and ordered that a body attachment issue against him.

[13] Mother filed a motion to correct error and argued in part that there was no evidence to show DCS made a referral to Harbor Lights and that the testimony was that FCM Mikesell contacted Harbor Lights and left a message. Mother further argued in part that the evidence presented was that Mother was already involved with Aspire at the team meeting on January 22, 2014, and that FCM Brady testified she was not sure how Mother initiated services, that when she received the file there was a referral, and that there was no indication that Mother requested a referral. Mother also asserted that, at the dispositional hearing, she

had requested that any requirements pertaining to C.H.'s father be removed from the dispositional order.

On July 31, 2014, the trial court entered an order on Mother's motion to correct error and amended Findings 44 through 46 of the May 15, 2014 order. Specifically, the court amended Finding 44 to state that, at the point of the family team meeting, Mother had not pursued the Harbor Lights referral and that Mother was attending Aspire on an out-patient basis. The court also amended Finding 45 to state that Mother again requested assistance from DCS during the family team meeting, and Finding 46 to state that, as of the date of the fact finding, Mother was attending Aspire for substance abuse counseling and individual and group therapy and that DCS was paying for this service. The court found no error in C.H.'s dispositional order regarding C.H.'s father.

## Discussion

The issue is whether sufficient evidence supports the trial court's determination that the Children were CHINS. When we review the sufficiency of evidence, we consider only the evidence and reasonable inferences therefrom that are most favorable to the judgment. *In re A.H.*, 913 N.E.2d 303, 305 (Ind. Ct. App. 2009). We neither reweigh the evidence nor reassess the credibility of the witnesses. *Id.* DCS was required to prove by a preponderance of the evidence that the Children were CHINS. *See id.* When a court's orders contain specific findings of fact and conclusions of law, we engage in a two-tiered review. *Id.* First, we determine whether the evidence supports the findings. *Id.* Then, we determine whether the findings support the judgment. *Id.* We reverse the trial court's judgment only if it

is clearly erroneous. *Id.* A judgment is clearly erroneous if it is unsupported by the findings and conclusions. *Id.* When deciding whether the findings are clearly erroneous, we consider only the evidence and reasonable inferences therefrom that support the judgment. *Id.*

[16] Mother contends that the court's findings do not support the judgment that the Children's physical or mental conditions were seriously impaired or endangered as a result of inability, refusal, or neglect of the parents. She argues the Children were well-fed and well-clothed, their physical needs were being met, they were receiving counseling regarding their witnessing domestic violence and their separation issues, and there is no evidence their parents were not cooperating with this course of action. In support, Mother points to the testimony of FCM Brady that to the best of his knowledge the Children attend school regularly and are doing appropriately in school, that D.P. has braces and sees an orthodontist frequently and wears glasses and sees an ophthalmologist, and that C.H. goes to the dentist. Mother points to Finding 23 of the court's order that, at the time of her interview, FCM Mikesell found the physical condition of the Children's home satisfactory, with food in the household; notes that the interview occurred on December 29, 2013, one day after the call to police; and observes that Finding 32 of the court's order provided that, when FCM Mikesell met the Children, they were appropriately dressed and that he established that their basic health and medical needs were being met.

[17] Mother further contends that the evidence does not support the conclusion that the coercive intervention of the court is necessary to compel the needs of the Children

being met. She points to the evidence that she was attending New Life Recovery on her own and that DCS did not facilitate in her attending those meetings; that, although she initially discussed in-patient therapy, other than a call to Harbor Lights, there was no direct assistance or referral from DCS to initiate the in-patient treatment; that she ultimately chose out-patient treatment at Aspire as an alternative; and that the July 25, 2014 dispositional decree did not specifically require her to go in-patient for her drug treatment. She contends that the evidence is insufficient to prove she was refusing to participate in treatment absent the coercive intervention of the court, and that she was not only attending Aspire, but was voluntarily attending New Life Recovery, and that none of the State's actions compelled her attendance.

[18] DCS maintains that the evidence supports the trial court's conclusion that the Children were CHINS and notes that Mother does not specifically challenge any of the court's factual findings, that the court's unchallenged findings support its conclusions and judgment, and that therefore the court's order adjudicating the Children as CHINS is not clearly erroneous. DCS asserts that Mother's arguments are a request for this court to reweigh the evidence and that the court did not err in concluding that the Children had a CHINS condition based on the domestic violence which directly resulted from Mother's untreated substance addictions. DCS argues that the Children were not removed based on concerns that they were not receiving food, clothing, shelter or medical care, and that, rather, the Children were removed after Mother and Father J.H. engaged in an altercation that resulted because Father J.H. intervened when he believed Mother was trying to use heroin.

DCS notes that Mother admitted she used heroin, valium, and marijuana the day before the altercation and took a pain pill the day of the altercation, and that she admitted she needed assistance in addressing her addiction and expressed her belief that in-patient treatment would be her best option but that she did not have the means to obtain the help she needed. DCS argues that domestic violence was a very real issue in this case and that Mother admitted her drug use was causing Father J.H. and her to fight.

[19] DCS further contends that the court's coercive intervention was necessary, noting that FCM Mikesell contacted Harbor Lights and left a message, left it up to Mother to follow up the next day to see if the facility had any openings, and Mother did not do so; that Mother again requested assistance at the team meeting; and that, although Mother had started attending meetings at New Life Recovery, FCM Brady was unfamiliar with the program and thus it was unclear whether such treatment would properly address her needs. DCS maintains that, without the court's intervention, the Children will be placed at additional risk of repeated trauma and removals.

[20] Ind. Code § 31-34-1-1 provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
>> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education or supervision; and
>>
>> (2) the child needs care, treatment, or rehabilitation that:

> (A) the child is not receiving; and
>
> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

The court need not wait until a tragedy occurs before intervening; parental action or inaction is sufficient to adjudicate a child as a CHINS. *In re A.H.*, 913 N.E.2d at 306. The purpose of a CHINS adjudication is to protect the subject child, not to punish the child's parents. *Id.*

[21] We note that Mother appears to limit her argument to whether the findings of the trial court support the court's judgment and does not assert that the court's findings were not based upon the evidence presented at the fact-finding hearing. Also, to the extent Mother emphasizes certain findings of the trial court, we will not reweigh the evidence and will consider only the evidence and reasonable inferences most favorable to the judgment. *See In re A.H.*, 913 N.E.2d at 305.

[22] With respect to the trial court's conclusion that the Children's physical or mental condition is seriously impaired or seriously endangered as a result of the actions or inactions of Mother and Father J.H., the court found that Mother and Father J.H. were both intoxicated and involved in a domestic violence incident in front of the Children, that Mother has an admitted heroin addiction, and that as a result of the incident Mother was transported to the emergency room and Father J.H. was arrested. In its May 15, 2014 order, the court found that police had been called to the home on December 28, 2013 in response to a report of domestic violence, that Father J.H. acknowledged the domestic disturbance and reported that he had tried to grab heroin from Mother and "when doing so got her hand" and that Mother

assaulted him, and that the Children were present in the home during the altercation. Appellant's Appendix at 50.

[23] The court found that FCM Mikesell found the physical condition of the Children's home satisfactory with food in the household, the Children were appropriately dressed, and their basic health and medical needs were being met. However, we decline to place more importance than the trial court did on these findings, or on the other testimony to which Mother refers regarding the Children's school performance or eye or dental care, in relation to the court's other findings related to the domestic altercation between Mother and Father J.H. and Mother's drug addiction, or to otherwise reweigh the evidence.

[24] Based upon the record, we cannot say that the findings of the trial court do not support the conclusion that the Children's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of Mother and Father J.H. to provide them with necessary supervision.

[25] In addition, to the extent Mother challenges the court's conclusion that the Children need care that is unlikely to be provided or accepted without the coercive intervention of the court, the court found in part that coercive intervention is necessary because Mother admitted to a heroin addiction and requested assistance in obtaining in-patient treatment, that she did not follow through with any in-patient treatment, that Father J.H. was arrested for domestic battery and admitted to marijuana use, and that DCS is unaware if the issue of domestic violence has been addressed.

[26] While Mother argues that she was attending New Life Recovery on her own and ultimately chose out-patient treatment, and thus that the evidence is insufficient to show she was refusing treatment, we note the court's findings reveal that Mother has an admitted heroin addiction, that she used heroin, valium, and marijuana the day before the December 28, 2013 altercation, and that two unused needles were found in the home. We further note the court's findings that Mother "wanted in-patient treatment" and stated she was unable to afford in-patient treatment but was willing to do it if DCS assisted her, that FCM Brady was not familiar with New Life Recovery, that at the point of the family team meeting Mother had not pursued the Harbor Lights referral, and that Mother again requested assistance from DCS during the family team meeting. *Id.* at 52.

[27] Based upon the record, we cannot say the findings of the trial court do not support the conclusion that the Children need care, treatment, or rehabilitation that is unlikely to be provided or accepted without the coercive intervention of the court.[3] We conclude that the trial court's findings of fact, conclusions, and judgment are not clearly erroneous.

---

[3] In support of her argument, Mother cites to the Indiana Supreme Court's opinion in *In re S.D.*, 2 N.E.3d 1283 (Ind. 2014), *reh'g denied*. *In re S.D.* involved a child who needed particular medical care, and the Court found the fact that the single mother of four other children attempted but failed to complete one step of a home-care simulation did not support an inference that the mother was likely to need the court's coercive intervention to finish the home-care simulation. 2 N.E.3d at 1286-1290. These facts are factually distinguishable from those in this case.

## *Conclusion*

[28] For the foregoing reasons, we affirm the trial court's determination that the Children are CHINS.

[29] Affirmed.

[30] Bailey, J., and Robb, J., concur.